UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

Ramon Guerrero

    v.                      Civil No. 06-cv-173-SM

New Hampshire Department
of Corrections, et al.

**REPORT AND RECOMMENDATION**

Before the Court is Ramon Guerrero's complaint, filed pursuant to 42 U.S.C. § 1983 and State tort law, alleging that his constitutional rights were violated by New Hampshire Department of Corrections ("DOC") employees during his incarceration at the New Hampshire State Prison ("NHSP"). The complaint is before me for preliminary review to determine whether, among other things, it states any claim upon which relief might be granted. See 28 U.S.C. § 1915A; United States District Court for the District of New Hampshire Local Rule ("LR") 4.3(d)(2). For the reasons stated herein, I recommend that the claim alleging a due process violation for placement in the Secure Housing Unit ("SHU") and defendant DOC be dismissed from this action. In an Order issued simultaneously with this Report and Recommendation (hereinafter the "Simultaneous Order"),

I direct that the claims alleging failure to protect, inadequate medical care and the claims raised under State law, proceed against defendants Christie, Conner, Freedman, Carroll, and Ash.

<u>Standard of Review</u>

Under this Court's local rules, when an incarcerated plaintiff commences an action pro se and in forma pauperis, the magistrate judge must conduct a preliminary review and prepare a Report and Recommendation discussing whether the complaint or any portion thereof should be dismissed because:

> (i) the allegation of poverty is untrue, the action is frivolous, malicious, or fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief under 28 U.S.C. § 1915A(b); or
>
> (ii) it fails to establish subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).

LR 4.3(d)(2). In conducting a preliminary review, the Court construes pro se pleadings liberally. See <u>Ayala Serrano v. Lebron Gonzales</u>, 909 F.2d 8, 15 (1st Cir. 1990) (following <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976) to construe pro se pleadings liberally in favor of the pro se party). "The policy behind affording pro se plaintiffs liberal interpretation is that if they present sufficient facts, the court may intuit the correct cause of action, even if it was imperfectly pled." <u>Ahmed</u>

v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997), cert. denied, Ahmed v. Greenwood, 522 U.S. 1148 (1998).

At this preliminary stage of review, all factual assertions made by the plaintiff and inferences reasonably drawn therefrom must be accepted as true. See Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996) (stating the "failure to State a claim" standard of review and explaining that all "well-pleaded factual averments," not bald assertions, must be accepted as true). This review ensures that pro se pleadings are given fair and meaningful consideration. See Eveland v. Dir. of C.I.A., 843 F.2d 46, 49 (1st Cir. 1988).

## Background

In October 2003, Guerrero was incarcerated at the New Hampshire State Prison ("NHSP").[1] At that time, he was housed in the Closed Custody Unit. Guerrero alleges that another inmate, Brian Woodburn, made a racially derogatory comment to Guerrero and his cellmate. Later, Woodburn entered Guerrero's cell and began to hit Guerrero's cellmate while the cellmate was sleeping

---

[1] It appears that Guerrero was released on parole on August 5, 2006, three months after he filed this complaint. The website for the New Hampshire Department of Corrections, however, indicates that Guerrero was returned to the NHSP in December of 2006.

on the bottom bunk.  Guerrero got off of the top bunk and held Woodburn off of his cellmate until the cellmate woke up and was able to defend himself.

Two days after this altercation, Guerrero moved to a different cell.  Guerrero's new cell was in the same housing areas as Woodburn's cell.  On the day Guerrero moved, Woodburn approached Guerrero and started a fight.  Guerrero asserts that, on that occasion, Guerrero "got the better of" the altercation.  Other inmates, who saw Guerrero and Woodburn fighting, alerted correctional staff.  Both Guerrero and Woodburn were called to Sgt. Christie's office and warned that they would both be sent to the Secure Housing Unit ("SHU") if there were further problems between them.  Correctional Officer ("CO") Conner was also aware of the fight.  The correctional staff did not separate Guerrero and Woodburn to avoid further problems, however, and both inmates were returned to the same housing area.  Guerrero alleges that failing to separate inmates with a known history of problems and violence between them is a deviation from prison policy.

One week later, Guerrero was in the recreation yard playing chess with another inmate.  Woodburn approached Guerrero from behind with a bucket full of hot water and liquid chemicals.

Woodburn poured the bucket over the right side of Guerrero's face and punched Guerrero in the left ear several times.  Guerrero reports that he was in extreme pain, and felt the right side of his face "melting down [his] body."  One correctional officer apprehended Woodburn while other officers rushed Guerrero to the prison's medical unit.

Once at the medical unit, Guerrero claims that he was not given any medication to alleviate his pain.  Instead, the officers proceeded to photograph him while he screamed in pain and begged to be taken to the hospital.  After more than a half an hour, Guerrero was transported to the hospital by correctional staff where he was treated for his pain and his injuries.  Guerrero spent almost a month in the hospital.

Once out of the hospital, Guerrero was held in the medical unit for at least two weeks.  Guerrero was taken to an eye doctor outside of the prison for treatment.  The outside eye doctor gave specific instructions to the prison medical staff regarding Guerrero's eye medication, as Guerrero was unable to apply it himself.  The doctor advised prison staff that for two weeks, Guerrero needed the medication applied every two hours.  After

that, Guerrero would need the medication applied four times a day.

Shortly after that appointment, however, and before Guerrero was recovered enough to leave the medical unit, NHSP physician Dr. Freedman told the correctional staff that Guerrero was fine to be moved out of the medical unit. Guerrero was still unable to apply his medications on his own and was receiving significant pain medication at the medical unit. Guerrero was placed at SHU, in conditions that amounted to solitary confinement, without further hearing.

At SHU, Guerrero was not given pain medication. After one hour in SHU, Guerrero alleges that he was in pain and in need of medication. Guerrero asked to see a nurse. Guerrero was told by SHU staff that he would see the nurse once a day to receive medications. Guerrero told the staff that his eye was bothering him and that he needed to see a nurse immediately. The officers on duty, Cpl. Carroll and CO Ash said they would call the nurse. One hour later, Carroll and Ash told Guerrero that the nurse had said that she would see him the following day. In the meantime, there was no pain or eye medication for Guerrero at the SHU.

Carroll and Ash did not do anything further to obtain medical attention for Guerrero.

The following day, the nurse came to SHU on daily medication rounds. The nurse told Guerrero that he was fine, gave him his medications, told him to apply them himself, and left. Guerrero tried to apply the medication himself, but did something wrong and scratched his injured eye. Guerrero told the correctional staff on duty that he needed immediate emergency medical attention for his eye and pleaded with them to call the nurse to return to the SHU to assist him. The correctional staff refused and told Guerrero to wait until the following day.

The next day, a different nurse came to see Guerrero during daily medication rounds. She was incredulous that Guerrero was at SHU and directed the correctional staff to open Guerrero's cell and transport him to the medical unit as soon as possible because Guerrero needed to go to the hospital.

Guerrero was taken to the hospital where he received treatment. Guerrero was returned to the prison and was held in the medical unit for several months. During that time, the correctional authorities advised Guerrero that he would be moved to the medium custody unit of his choice. Guerrero felt that

this offer was an attempt to appease Guerrero for the damage done by the prison authorities' previous inadequate attention to his medical needs.

Once in medium custody, Guerrero continued to be treated by an outside eye doctor for checkups.  Guerrero claims the doctor did nothing except apply eye drops.  Guerrero asked the doctor whether surgery was indicated to repair the damage to his eyesight.  The doctor felt that surgery would be unnecessary and that Guerrero's eye would be fine.

Guerrero was transferred to the Northern New Hampshire Correctional Facility.  Once there, Guerrero's eye worsened, requiring medical attention.  When Guerrero asked for medical assistance for his eye, the correctional staff told him that he could not seek medical attention on a Saturday.  Guerrero asked for a grievance form so that he could grieve the denial of necessary medical attention through the prison's administrative process.  Guerrero was refused a grievance form because, he was told, he could have availed himself of sick call and failed to do so.  Guerrero wrote an inmate request slip memorializing the denial of a grievance form and the reasons he was given for the denial.

Guerrero alleges that at the time he filed his complaint in May of 2006 he had not received any updated medical care for his eye. Further, Guerrero alleges that, contrary to the eye doctor's prediction, his eye is not fine, but he has not received any aftercare to explore the possibility of corrective surgery for his right eye blindness.

Furthermore, Guerrero alleges that as a result of being punched in the left ear, he suffered a 90% hearing loss in that ear. Guerrero claims that he has not received adequate medical care or treatment for the damage to his ear.

## Discussion[2]

I. Section 1983 Claims[3]

Section 1983 creates a cause of action against those who, acting under color of State law, violate federal constitutional

---

[2] The claims as identified herein will be considered for all purposes to be the claims raised in the complaint. If Guerrero disagrees with this identification of the claims, he must do so by proper objection to this Report and Recommendation or by properly moving to amend his complaint.

[3] I find that Guerrero has alleged State law claims arising out of the same facts and circumstances as his inadequate medical care and failure to protect claims. Accordingly, I will direct, in my Simultaneous Order, that the State law claims be served on the defendants with the federal constitutional claims.

or statutory law.  See 42 U.S.C. § 1983;[4] Parratt v. Taylor, 451 U.S. 527, 535 (1981) (overruled on other grounds by Daniels v. Williams, 474 U.S. 327, 330-331 (1986)); Wilson v. Town of Mendon, 294 F.3d 1, 6 (1st Cir. 2002).  In order for a defendant to be held liable under § 1983, his or her conduct must have caused the alleged constitutional or statutory deprivation.  See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 692 (1978); Soto v. Flores, 103 F.3d 1056, 1061-62 (1st Cir.), cert. denied, 522 U.S. 819 (1997).

## II.  Inadequate Medical Care

Claims of inadequate medical care in the prison context arise under the Eighth Amendment, which protects inmates from prison officials acting with deliberate indifference to the inmate's serious medical needs.  See Farmer v. Brennan, 511 U.S. 825, 831 (1970); Surprenant v. Rivas, 424 F.3d 5, 18-19 (1st Cir.

---

[4] 42 U.S.C. § 1983 provides that:

> Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

2005). To assert a viable cause of action for inadequate medical care, an inmate must first state facts sufficient to allege that he had a serious medical need for which adequate care was not provided. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981); Farmer, 511 U.S. at 832; Estelle, 429 U.S. at 106. The inmate must then allege that a responsible prison official was aware of the need, or of the facts from which the need could be inferred, and still failed to provide treatment. Estelle, 429 U.S. at 106. A serious medical need is one that involves a substantial risk of serious harm if it is not adequately treated. Barrett v. Coplan, 292 F. Supp. 2d 281, 285 (D.N.H. 2003); Kosilek v. Maloney, 221 F. Supp. 2d 156, 180 (D. Mass. 2002) (citing Farmer, 511 U.S. at 835-47); see also Gaudreault v. Mun'y of Salem, 923 F.2d 203, 208 (1st Cir. 1990), cert. denied, 500 U.S. 956 (1991) (defining a serious medical need as one "that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.").

"[A]dequate medical care" is treatment by qualified medical personnel who provide services that are based on medical considerations and are of a quality acceptable to the prudent

professional standards in the community, tailored to an inmate's particular medical needs.  United States v. DeCologero, 821 F.2d 39, 42-43 (1st Cir. 1987).  This does not mean that an inmate is entitled to the care of his or her choice, simply that the care must meet minimal standards of adequacy.  Deliberate indifference may be found where the medical care provided is "so clearly inadequate as to amount to a refusal to provide essential care." Torraco v. Maloney, 923 F.2d 231, 234 (1st Cir. 1991). Constraints inherent in a prison setting may affect the choice of care provided, and may be relevant to whether or not prison officials provided inadequate care with a deliberately indifferent mental State.  See Wilson v. Seiter, 501 U.S. 294, 302 (1991).

    Here, Guerrero has alleged that he has very serious medical conditions which are known to the DOC's medical personnel.  The correctional staff at the NHSP observed Guerrero receive very significant injuries, for which he was hospitalized for weeks and spent a significant amount of time in the NHSP medical unit. Guerrero has received medical care from both prison and nonprison medical personnel and received a number of medications for both his injuries and for pain.  There is no question that Guerrero

has alleged serious medical conditions regarding the damage to his right eye and to his left ear.

Guerrero has also alleged that prison staff provided inadequate medical care when they prematurely moved him from the medical unit, refused to give him pain medication when it was necessary, and failed to insure the proper application of his eye medication. Further, Guerrero has been denied medical aftercare services necessary to treating his blindness and hearing loss. Accordingly, I find that Guerrero has stated a claim for failure to provide adequate medical care against Dr. Freedman, a nurse with the first name Fran,[5] and the two officers Guerrero has

---

[5]Guerrero has not provided this Court with sufficient information to allow us to serve this complaint against Fran at this time. If Guerrero wishes to pursue his inadequate medical care claim against Fran, or anyone else who has not been specifically named in this complaint, he will have to obtain Fran's last name and the full name or names of any other potential defendants in discovery and appropriately move to amend the complaint to add those individuals to this action as defendants. To this end, upon service of this action on the named defendants, Guerrero can serve the named defendants with interrogatories to obtain the full names of the presently unnamed defendant or defendants pursuant to Fed. R. Civ. P. 33(a) which states in pertinent part:

> Without leave of court or written stipulation, any party may serve upon any other party written interrogatories, not exceeding 25 in number including all discrete subparts, to be answered by the party served or, if the party served is a public or private corporation or a

named as deliberately denying him adequate medical care: Cpl. Carroll and CO Ash.  In my Simultaneous Order, I will direct that this claim be served on defendants Freedman, Carroll and Ash.

III. Right to Protection from Other Inmates

The safety and security of all prisoners is protected by the Constitution.  See DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 190 (1989); Youngberg v. Romeo, 457 U.S. 307, 315-16 (1982).  To State a claim upon which relief might be granted alleging that the defendants failed to protect him, Guerrero must allege that the defendants were aware of and deliberately indifferent to a serious risk to his safety at the hands of other inmates.  See Burrell v. Hampshire County, 307 F.3d 1, 7 (1st Cir. 2002).

Here, Guerrero has alleged that correctional staff at the CCU, specifically, Sgt. Christie and CO Conner, were aware of the violence that had occurred between Guerrero and Woodburn and failed to separate them.  As a result of being left in the same section of the same housing unit, Guerrero and Woodburn had the

---

> partnership or association or governmental
> agency, by an officer or agent, who shall
> furnish such information as is available to
> the party.

same outside recreation time.  Woodburn, as a result, had the opportunity to cause serious debilitating injuries to Guerrero.  Guerrero sufficiently alleges that defendants Christie and Conner were aware of and disregarded a risk to Guerrero's safety, and that they failed to do anything to protect him from Woodburn.  I will therefore direct, in my Simultaneous Order, that this claim proceed against defendants Christie and Conner.

IV.   Due Process Claim/Housing in SHU

Guerrero alleges a violation of his due process rights because, he alleges, he was transferred to the SHU by Dr. Freedman, and there subjected to punitive conditions, without a due process hearing.  Inmates do not have any liberty interest in where they are housed, under either federal or State law, which could invoke protection by the due process clause.  See Meachum v. Fano, 477 U.S. 215, 225 (1976) (Due Process clause does not protect convicted prisoner against transfers within a State prison system as long as the prisoner is not subjected to a custody status that is outside the normal limits of the sentence or the range of punishment authorized by the conviction); Dominique v. Weld, 73 F.3d 1156, 1159-60 (1st Cir. 1996) (prisoner transferred from work-release to medium security had no

15

state-created liberty interest which would entitle him to due process before transfer to higher custody status); Brennan v. Cunningham, 126 N.H. 600, 604 (1985) (no liberty interest at stake in decision whether to house inmate in maximum or minimum security).  Moreover, transfers within the prison are well within the discretion of the correctional authorities and are not protected by State or constitutional law.  See Olim v. Wakinekona, 461 U.S. 238, 244 (1983).  Inmates have no right to pretransfer hearings prior to a change in housing.  See Meachum, 477 U.S. at 225; Guglielmo v. Cunningham, 811 F. Supp. 31, 38 (D.N.H. 1993) (holding neither the due process clause itself nor New Hampshire law creates a liberty interest entitling inmates to any process before being transferred); see also Harper v. Showers, 174 F.3d 716, 719 (5th Cir. 1999) (prisoner has no protected property or liberty interest in custodial classifications).  Even liberally construing his complaint as describing placement in punitive conditions of confinement,[6]

---

[6]Guerrero does not State that he was placed in SHU as a result of a disciplinary sanction.  However, even if he were, when a convicted prisoner is subjected to disciplinary sanction, he must prove that the sanction itself was so atypical of the normal incidents of prison life, and imposed such a hardship, that he was entitled to due process in order for the sanction to be constitutionally imposed.  Sandin v. Conner, 515 U.S. 472, 483-84 (1995).  I find that placement in SHU is not so atypical

there is no allegation that Guerrero's original sentence prohibited the DOC from housing him in a high custody status or in the "solitary confinement" conditions Guerrero describes at SHU.  Accordingly, I find that Guerrero does not demonstrate any reason why the defendants' decisions to house him as they did rises to the level of a deprivation of a right or liberty interest protected by the federal constitution or State law, and I recommend that any such claim be dismissed.

V.    Defendant DOC

It is well-settled that the Eleventh Amendment bars suits against State entities, including State agencies, unless the State has expressly waived immunity, which has not been done by New Hampshire for actions brought under § 1983.  See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 144 (1993) (absent waiver, neither a State nor agencies acting under its control may be subject to suit in federal court); Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (holding that neither a State nor its officials acting in their official capacities are "persons" under § 1983).  Accordingly, I find that

---

of the normal incidents of prison life that Guerrero, as a convicted inmate, could expect, that it would give rise to a due process violation.

the DOC, as a State agency, is immune from suit and I recommend that it be dismissed from this action.

## Conclusion

For the foregoing reasons, I recommend that the due process claim and defendant DOC be dismissed from this action. In my Simultaneous Order, I direct service of the inadequate medical care claim and pendant State law claims against defendants Freedman, Carroll and Ash, and service of the failure to protect claim and pendant State law claims against defendants Christie and Conner.

Any objections to this report and recommendation must be filed within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the district court's order. See Unauthorized Practice of Law Comm. v. Gordon, 979 F.2d 11, 13-14 (1st Cir. 1992); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986).

/s/ James R. Muirhead
James R. Muirhead
United States Magistrate Judge

Date:     April 10, 2007

cc:       Ramon Guerrero, pro se